UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
**MILWAUKEE DIVISION**

SONYA NORWOOD,

  Plaintiff,

v.

ADVOCATE AURORA HEALTH CARE,

  Defendant.

PLAINTIFF, SONYA NORWOOD'S, COMPLAINT

PRELIMINARY STATEMENT

1. Plaintiff Sonya Norwood ("Plaintiff") brings this action against her employer, Advocate Aurora Health Care ("Defendant") for violations of the the ADA Amendments Act of 2008 (ADAAA), 42 U.S.C § 12101, et seq., as amended, as amended ("ADA"), Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq.,., as amended ("Title VII"), Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., as amended ("ADEA"), and Wisconsin Statutes § 111.31, protecting the use or nonuse of lawful products away from work, to discriminate against Plaintiff with respect to discharging Plaintiff and refusing to bring her back to work after she used a lawful medication related to her disability.

2. Plaintiff also alleges that Defendant violated Wisconsin Statutes Section 905.04 and Health Insurance Portability and Accountability Act of 1996 ("HIPAA") in requesting private information from a physician of Plaintiff's without

first requesting a release be executed, or first requesting authorization of said disclosure(s).

3. Plaintiff brings this action for the purpose(s) of obtaining relief for back pay, reinstatement or frontpay, liquidated damages, costs, attorneys' fees, injunctive relief, and/or any such other relief that the Court may deem appropriate.

## JURISDICTION AND VENUE

4. The Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein under 29 USC § 623, et seq., as amended ( "ADEA"), and 29 USC 206(d), et seq. – all federal statutory law in place at the time of the actions alleged that gave rise to this complaint.

5. The Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367, as they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) in the U.S. District Court for the Eastern District of Wisconsin because a substantial part of the events giving rise to the claims occurred within the District and Defendant maintained substantial and systematic contacts in this District during the events that gave rise to the claims.

7. Plaintiff has exhausted his administrative remedies prior to filing this lawsuit. Plaintiff filed a complaint with State of Wisconsin

Department of Workforce Development Equal Rights Division ("ERD"), ERD Case # CR201901809, which was cross-filed as EEOC Case # 26G201901047. See Exhibit A. At the request of the Plaintiff, EEOC issued its right to sue letter on January 25, 2021, and was received by Plaintiff approximately one month thereafter. See Exhibit B.

## PARTIES

8. Defendant is a healthcare company with an office in Milwaukee County, Wisconsin.

9. Plaintiff is an adult resident of Milwaukee, WI.

10. The events that gave rise to this action occurred primarily in Milwaukee County, Wisconsin.

## GENERAL ALLEGATIONS

11. Plaintiff is an African-American female, of over 40 years in age – having been born on May 6, 1965 –, suffering from a leg and nerve impairment disability and arthritis that required use of lawful medication away from the workplace.

12. During her interview, Ms. Floryance advised Plaintiff that her skills were impeccable compared to previous candidates.

13. During her interview, Ms. Floryance also advised Plaintiff that Defendant needed help right away because Defendant was short-handed.

14. On April 15, 2019, Ms. Cruz contacted Plaintiff by phone and email to confirm education.

15. On April 16, 2019, Ms. Floryance called Plaintiff to tell her she was hired to work for Defendant as a Home Health and Hospice Assistant, with a start date of May 1, 2019. And, Ms. Mulder would reach back out to go over the next steps in the process.

16. On April 23, 2019, Plaintiff attended her pre-placement drug screen and physical at Aurora's Occupational Health Clinic. During the physical, Plaintiff advised the person collecting her hair sample that she was taking pain medication due to her leg impairment and arthritis. Defendant was advised that this should not affect the test result as long as Plaintiff confirmed through her doctor that she had a prescription.

17. Dr. Macher conducted a physical on Plaintiff's leg and said the Plaintiff's impairment would not affect her ability to perform the job for Defendant.

18. Initially, on April 25, 2019 at about 2:00PM, Plaintiff received a call from Ms. Lampone, in which Ms. Lampone advised Plaintiff that the drug test revealed prescription medication in the test, and that Plaintiff had to verify she had a valid prescription. Plaintiff responded that she did, and that it was for her leg impairment and arthritis. She then clarified if Plaintiff's doctor could verify the prescription, Defendant would clear Plaintiff to pass the drug test. This was when the employer was put on notice of Plaintiff's disability and use of lawful products.

19. Then, Ms. Lampone called the next day, on April 26, 2019.

During that call, Ms. Lampone was only concerned with whether Plaintiff's disability would prevent her from doing her job – and didn't seem to care about the drug test anymore. So, she proceeded to fax a medical information document to her health care provider, Doctor Kip Metzer, without first requesting that Plaintiff complete/sign a medical release form. The form requested medical history of Plaintiff.

20. The form faxed to Plaintiff's doctor was refaxed, and requested information about accommodations, treatment plans, and medications.

21. On April 30, 2019, Dr. Wormack called confirming the failed drug test for use of marijauna. Plaintiff responded that something was wrong, since she had never smoked marijuana and that she had a valid prescription. She then requested another test be run.

22. After her call with Dr. Wormack, Plaintiff called Ms. Mulder. Ms. Mulder sent a correspondence that she would return the call. After "looking into" the situation, Ms. Mulder called back and terminated Plaintiff, despite the fact that Plaintiff requested the test be redone or reviewed given that Plaintiff had never smoked marijuana. Ms. Mulder responded that maybe Plaintiff smoked marijuana on the holiday and forgot somehow, to which Plaintiff responded that she felt she was being discriminated against. Plaintiff also advised Ms. Mulder of her earlier conversation with Dr. Wormack (in which she mentioned her medication due to her disability).

23. On May 1, 2019, Ms. Roemheld confirmed by phone that

Plaintiff would get the drug test as soon as Defendant got a hold of it, and that Defendant could not have made a mistake because it doesn't make any mistakes.

24. The next day, on May 2, 2019, Plaintiff took a 9 Panel drug test through LABCORP National drug screening. The hair test went back 3-4 months – and covering the period tested by Defendant-, and was a test for marijuana in the system. That test was found to be negative for marijuana on May 10, 2019.

25. Plaintiff finds it not credible that the Defendant's test could have three times the cutoff when the independent test was entirely negative.

26. Plaintiff immediately called Ms. Mulder to inform her of the negative test, and that she still had not received Defendant's allegedly positive test. Plaintiff asked Ms. Mulder if she could forward the negative test. Ms. Mulder responded that her decision was "final" and could not be reviewed for any reason.

27. An Aurora employee has confided in Plaintiff that Ms. Floryance was frequently complaining about people being on medical leave or calling in sick. So, there was a reason to rescind upon learning of Plaintiff's disabilities.

28. Plaintiff suffered depression, and serious health issues since his termination.

FIRST CLAIM FOR RELIEF

Violations of ADA, ADEA, Title VII, and Wis. St. § 111.31
Discrimination in Discriminatory Discharge/Refusal to Hire/Rescind Offer

29. Plaintiff reasserts and incorporates by reference all previous paragraphs as if they were set forth herein.

30. ADA, ADEA, Title VII, and Wis. St. § 111.31 all prohibit termination, refusal to hire, and/or rescinding of an offer of employment for discriminatory reasons based on disability, age, race, and/or the use or nonuse of lawful products.

31. During his employment with Defendant, Plaintiff was entitled to the rights, protections, and benefits provided under ADA, ADEA, Title VII, and Wis. St. § 111.31.

32. During Plaintiff's employment with Defendant, Defendant was an employer within the meaning of ADA, ADEA, Title VII, and Wis. St. § 111.31 and Plaintiff was an employee within the meaning of ADA, ADEA, Title VII, and Wis. St. § 111.31.

33. Plaintiff was discharged based on accusations that are entirely false, and for which Plaintiff was not provided an opportunity to know of the accusations and defend them, and refused to retest or consider whether Plaintiff's medication could have caused a false test. This is especially noticeable given that Plaintiff advised Ms. Mulder that she had received a negative test thereafter and that Defendant had staffing needs.

34. Plaintiff was initially advised after her test that she could still

pass if she provided proof of medication. This was changed after Defendant starting looking into Plaintiff's disabilities.

35. Upon information and belief, Defendant knew or should have known that the test may have been false and/or affected by Plaintiff's medications at least upon learning that Plaintiff had since received a negative test, but refused to consider the negative test.

36. And, Defendant would have considered the negative test were it not for having since learned of Plaintiff's disabilities.

37. And, Plaintiff believes the comments about her forgetting about smoking marijuana during a holiday are racially motivated, and tend to show true motives – at least in part – in Defendant's decision to rescind the offer of employment.

38. Plaintiff believes that her full profile, including her age and use of lawful products were at least motivating factors in the decision to rescind the offer of employment to Plaintiff.

39. Defendant was on notice of Plaintiff's disabilities and use of lawful products prior to her discharge/non-hire/rescission of the offer to employ her.

40. Defendant's conduct constitutes willful discrimination against Plaintiff.

41. Successful Plaintiff is entitled to reimbursement of costs, damages she is entitled to under the law, and attorneys' fees expended in

successfully prosecuting an action.

## SECOND CLAIM FOR RELIEF

### Violations of Wis. St. § 905.04 and HIPAA

42. Plaintiff reasserts and incorporates by reference all previous paragraphs as if they were set forth herein.

43. Upon information and belief, Defendant had a duty to protect its employees against unauthorized, private communications or disclosures under the patient/physician privilege. Defendant ignored those duties in making requests without Plaintiff's prior authorization or knowledge concerning sensitive communications and information related to Plaintiff's disabilities and prescribed medications.

44. Defendant was aware of its obligations to obtain prior authorization from Plaintiff before soliciting private medical information from Plaintiff's treating physician(s).

## REQUEST FOR RELIEF

WHEREFORE, it is respectfully prayed that this court grant the following relief:

a) An Order, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, declaring Defendants' actions as described in the Complaint as unlawful and in violation of Wisconsin Law and applicable regulations and as dilatory or otherwise unjust as defined by Wisconsin Law;

b) An Order finding that Defendant violated the ADA, ADEA, Title VII, Wis. St. § 111.31, Wis. St. § 905.04 and HIPAA;

c) An Order finding that Defendant's violations of law were dilatory or otherwise unjust;

d) Judgment against Defendant in the amount equal to Plaintiff's lost wages in back pay, front pay, punitive damages, compensatory damages, and liquidated damages for Defendant's violations;

e) An award of reinstatement;

f) An award in the amount of all costs and attorneys' fees incurred in the course of prosecuting these claims as well as pre-judgment and post-judgment interest; and

g) Such other relief as the Court deems just and equitable.

DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial pursuant to FED. R. CIV. P. 38(b).

Dated this 26th day of April, 2021.

          Respectfully submitted,

           s/ Maxwell C Livingston
          Maxwell C Livingston
          SBN 1084764
          Law Offices of Maxwell Charles Livingston,
          16601 W Greenfield Ave
          New Berlin, WI 53151
          Telephone: (262) 317-9717
          Fax: (866) 433-4321
          Email: max@maxlivingstonlaw.com