UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SONYA NORWOOD,

        Plaintiff,

v.

        Case No. 21-cv-0535-bhl

AURORA HEALTH CARE, INC.,

        Defendant.

## ORDER GRANTING SUMMARY JUDGMENT

In 2019, Aurora Health Care, Inc.[1] withdrew Sonya Norwood's conditional offer of employment after she tested positive for marijuana on her pre-employment drug screen. ECF No. 29 at 9–13. On April 26, 2021, Norwood filed a complaint alleging that Aurora used its drug-free workplace policy as a pretext, and that Aurora did not hire her because she is disabled and African American. ECF No. 1 at 3–6. She claims Aurora therefore violated the Americans with Disabilities Act (ADA) and Title VII of the Civil Rights Act.[2] *Id.* at 6–9. Aurora has moved for summary judgment. ECF No. 16. For the reasons given below, the Court will grant summary judgment and dismiss the complaint.

### FACTUAL BACKGROUND

On March 12, 2019, Sonya Norwood applied to work for Aurora Health Care, Inc. as a home health and hospice assistant. ECF No. 29 at 6. According to Norwood, she disclosed a permanent disability related to her knee in her application. ECF No. 23 at 2. On March 18, 2019, Norwood interviewed with Stacy Mulder, an Aurora recruiter, via telephone. ECF No. 29 at 6. One or two weeks later, she had an in-person interview with Cheryl Floryance, the hiring manager

---

[1] The complaint names the defendant as "Advocate Aurora Health Care." ECF No. 1 at 1. The defendant has stated its correct name is "Aurora Health Care, Inc." *See, e.g.*, ECF No. 17 at 1.

[2] The complaint includes two counts. ECF No. 1 at 6–9. The first count alleges violations of the Americans with Disabilities Act, the Age Discrimination in Employment Act, Title VII of the Civil Rights Act, and Wis. Stat. § 111.31. *Id.* The second count alleges violations of Wis. Stat. 905.04 and the Health Insurance Portability and Accountability Act. *Id.* On July 29, 2021, the Court dismissed all but the ADA and Title VII claims pursuant to an unopposed motion for partial dismissal. *See* ECF Nos. 4, 5, 9, 10.

for the position Norwood sought. *Id.* On April 16, Norwood received a conditional offer of employment from Aurora. *Id.* at 6–7. The offer was contingent on Norwood's completion of certain pre-employment requirements, including a pre-employment physical and drug screen pursuant to Aurora's "Drug Free Workplace Policy," under which all applicants must pass a pre-employment drug screen. *Id.* at 2, 7. Norwood completed her physical examination on April 23. *Id.* at 7. During her exam, she provided a hair sample to be used for her pre-employment drug screen. *Id.*

Aurora sends hair samples collected for its pre-employment screening process to a third-party laboratory for processing. *Id.* at 3. In 2019, this laboratory was Psychemedics. *Id.* at 4. The laboratory, in turn, sends its test results to a third-party medical review officer (a licensed physician) for review and confirmation. *Id.* at 3. For Norwood's drug screen, the medical review officer was Dr. John Womack at Noble Diagnostics. *Id.* at 4–5, 7–8. As a standard part of the process, the medical review officer attempts to determine whether there are legitimate explanations for any positive test results. *Id.* at 3.

On or around April 29, 2019, Norwood received a phone call from Dr. Womack. *Id.* at 7–8. Womack told Norwood that she had tested positive for hydrocodone and marijuana. *Id.* at 8. Norwood explained she had a prescription for hydrocodone, and Womack was later able to call Norwood's pharmacy and verify this explanation. *Id.* Womack asked Norwood if there was an explanation for the marijuana result, but Norwood did not provide an explanation and asserted it was impossible that the test result was correct. ECF No. 29 at 9; ECF No. 19-1 at 13.

Norwood alleges she later called Womack's office and asked Womack's assistant whether she might have tested positive for marijuana because of secondhand smoke. ECF No. 29 at 15. According to Norwood, during this conversation the assistant asked her, "Did you smoke marijuana during the holidays?" and further commented "Maybe you forgot that you smoked marijuana." *Id.* Norwood says she interpreted these comments as racially motivated because they "insinuate[ed] that there is a class, a group of people [who] do[] that." ECF No. 29 at 15; ECF No. 19-1 at 18.[3]

Norwood also alleges that at some point after her physical, Aurora sent a form to her doctor asking about whether Norwood had any permanent conditions that required accommodations.

---

[3] Norwood alleges she had a similar conversation with Margaret Roemheld at an unspecified time. ECF No. 29 at 15; *see below.*

ECF No. 31 at 1; ECF No. 23 at 1–2, 3–4. She asserts that her doctor, acting without her consent, completed this form and faxed it back to Aurora on April 29, 2019. ECF No. 31 at 1; ECF No. 23 at 1–2, 3–4; ECF No. 23-1. According to Norwood, the completed form indicated she had a permanent condition making her unable to walk for more than short periods of time, and that this condition required accommodation. ECF No. 31 at 1; ECF No. 23 at 1–2, 3–4; ECF No. 23-1.

On April 30, the day after Aurora allegedly received the medical forms from Norwood's doctor, Aurora received Norwood's drug screen results from Noble Diagnostics. ECF No. 29 at 9. An Aurora recruiting assistant, Margaret Roemheld, received an email notification that Norwood had failed the drug screen. ECF No. 29 at 9; ECF No. 20-3. Roemheld relayed this information to Mulder, the Aurora recruiter who had conducted Norwood's initial telephone interview, and told her that Aurora would need to withdraw Norwood's conditional offer of employment based on Aurora's drug-free workplace policy. ECF No. 29 at 10. On that same day, April 30, Mulder called Norwood and withdrew her employment offer. *Id.* at 10–11. During the call, Norwood again asserted she could not have possibly failed the drug screen because she had never smoked marijuana. *Id.* at 10.

After Aurora withdrew its job offer, Norwood took a different drug screen with a different laboratory (one she found on the internet) as she tried to prove that Aurora's drug screen had been wrong. ECF No. 29 at 16; *see* ECF No. 23-3. According to Norwood, the new drug screen contradicted the first, indicating that she had not smoked marijuana during the relevant time period. ECF No. 31 at 3; ECF No. 23 at 2; *see* ECF No. 23-3. Norwood further alleges that someone at the company that conducted the new drug screen told her that her first drug screen had been "tampered with." ECF No. 31 at 3; ECF No. 29 at 14; ECF No. 19-1 at 16, 17, 23, 25, 28, 34; ECF No. 23 at 2; ECF No. 25 at 2; ECF No. 26 at 1. Aurora did not change its decision to withdraw Norwood's job offer, explaining it had no way to verify the reliability of results procured outside of its established processes. ECF No. 29 at 17.

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact." *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(c)). Material facts are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Id*. If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

## ANALYSIS

Norwood claims Aurora discriminated against her because of her disability and race in violation of the ADA and Title VII. ECF No. 1. Aurora seeks summary judgment on both claims. ECF No. 16. In opposition, Norwood has filed a short, four-page brief that offers meager support for the ADA claim. ECF No. 27. Norwood's submission fails to mention the Title VII claim altogether. *Id.* Even when the Court views the record in the light most favorable to Norwood, it must conclude that no reasonable jury could return a verdict for her on either claim.

**I.  Norwood Fails to Support Her Contention that Aurora's Drug-Free Workplace Policy Was a Pretext.**

"A disability discrimination claim under the ADA requires proof that: (1) the plaintiff was disabled; (2) the plaintiff was otherwise qualified to perform essential functions with or without reasonable accommodation; and (3) disability was the 'but for' cause of the adverse employment action." *Castetter v. Dolgencorp, LLC*, 953 F.3d 994, 996 (7th Cir. 2020) (citing *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019)). The standard for evaluating employment discrimination claims is "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *McCurry v. Kenco Logistics Servs.*, LLC, 942 F.3d 783, 788 (7th Cir. 2019).

Aurora contends Norwood has no evidence that her disability was the but-for cause of Aurora's decision to withdraw its job offer.[4] ECF No. 17 at 6–8. In response, Norwood points to what she considers suspicious circumstances surrounding Aurora's conduct. She argues that Aurora's drug-free workplace policy was simply a pretext for withdrawing her job offer, and that Aurora's actual discriminatory intent is evident from the timing of the decision. ECF No. 27 at 1–

---

[4] Aurora also argues Norwood has not proven she is disabled since the ADA states that "a qualified individual with a disability shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." ECF No. 17 at 6, n. 2. Norwood does not respond to this argument in her opposition brief, and Aurora insists this lack of response constitutes a waiver. ECF No. 30 at 4–5. But a genuine dispute remains as to whether Norwood actually engaged in the illegal use of drugs; she plainly disputes doing so. Accordingly, the Court cannot grant summary judgment on this ground.

3. In her telling, even though Aurora already knew Norwood had tested positive for hydrocodone[5] and marijuana, it did not immediately withdraw her offer of employment but instead followed up to see whether she had a prescription for hydrocodone—all the while knowing there could not possibly be a legal explanation for the marijuana. *Id.* She also points out that Aurora withdrew her offer, supposedly on the basis of the marijuana test result, only after it later received information about her need for permanent accommodations due to disability. *Id.* In addition to this suspicious timing, Aurora also refused to consider Norwood's subsequent drug test, even though it "proved the [first] test wrong." *Id.* at 2–3. Finally, Norwood argues certain other evidence shows that Aurora's explanation for not hiring Norwood was pretextual: her assertions she has never smoked marijuana; the fact that Aurora was "severely understaffed," which Norwood suggests is inconsistent with Aurora's decision not to hire her; and Norwood's conversation with the employee at the second drug test company who told her the drug test result had been "tampered with." *Id.* at 2–4.

Aurora offers explanations for the circumstances and timing of these events. According to sworn testimony, Aurora's withdrawal of Norwood's conditional employment offer and its refusal to consider her subsequent drug test were based on its legitimate business policy of maintaining a drug-free workplace. ECF No. 17 at 6–7. Aurora insists that Norwood has no competent evidence the drug test results were inaccurate, and even if they were inaccurate, affidavits from Aurora witnesses confirm the decisionmakers honestly believed the tests to be true and valid. *Id.*

In considering whether Aurora used its drug-free workplace policy as a pretext, the Court looks only to "whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Bless v. Cook Cnty. Sheriff's Off.*, 9 F.4th 565, 575 (7th Cir. 2021) (quoting *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000)). Aurora has submitted admissible evidence supporting its honest beliefs. Norwood, on the other hand, has offered no evidence of dishonesty and relies solely on her own speculative suspicions.

Moreover, the record explains away Norwood's suspicions related to the timing of Aurora's decision. As Aurora explains, Womack is a doctor at Noble Diagnostics, not a recruiter at Aurora. Accordingly, that he did not withdraw Norwood's job offer when he called her around April 29 to discuss her positive test results is not suspicious; he had no authority to withdraw

---

[5] Norwood refers to "oxycodone" in her opposition brief. ECF No. 27 at 1, 2. This appears to be a mistake. The record confirms she tested positive for hydrocodone. ECF No. 29 at 8.

Aurora's offer. On April 30, Aurora itself received Norwood's test results and then withdrew her offer immediately, that same day. Moreover, there is no evidence that Aurora received a fax from Norwood's doctor about her need for disability accommodations, let alone that Aurora received it before the offer withdrawal. Norwood's testimony in support of this alleged fact is not based on personal knowledge. And while she has filed an image of the alleged fax, the image is too blurry to read the fax or determine when it was sent or received. *See* ECF No. 23-1. Even assuming Aurora received the alleged fax sometime before its decision to withdraw Norwood's job offer, this would not have been the first occasion for Aurora to know about Norwood's need for accommodation; Norwood reported she had a permanent disability in her initial application. In sum, based on the evidence presented, no reasonable juror could find that Aurora's withdrawal was actually based on revelatory news of Norwood's disability, received in the nick of time the day before it learned she had failed her drug screen. As for Aurora's refusal to consider the second drug screen, that decision itself was part of Aurora's drug screen policy and therefore does not raise suspicion about Aurora's decision-making.

The rest of Norwood's arguments also fail. Her assertion that she has never smoked marijuana, even if true, is irrelevant to the question of whether Aurora's stated reliance on its drug-free workplace policy was dishonest. Likewise, Norwood has no evidence or personal knowledge of Aurora's being under-staffed, and even if Aurora admitted this fact, it is irrelevant. The alleged statement that someone had tampered with Norwood's drug screen is unsupported and is otherwise inadmissible hearsay. *See* Fed. R. Evid. 801. Even if it were admissible, it is too vague to create a genuine dispute of material fact as to Aurora's honest reliance on its policy.

## II. Norwood Has Abandoned Her Title VII Race-Discrimination Claim.

Norwood's opposition brief is focused exclusively on her ADA discrimination claim. She offers no response to Aurora's arguments on the Title VII claim. ECF No. 27. She has therefore waived any arguments in response to Aurora's arguments and is deemed to have abandoned her Title VII claim. "When a party raises arguments for summary judgment on various claims, the nonmoving party must respond to the movant's arguments as to each claim." *Zember v. Ethicon, Inc.*, No. 20-CV-369-JPS, 2021 WL 1087041, at *3 (E.D. Wis. Mar. 22, 2021) (citing *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014)). "The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment." *Id.* (quoting *Nichols*, 755 F.3d at 600). "In other words, when the nonmovant fails to

respond to the movant's arguments, the nonmovant 'abandon[s] [their] claim and summary judgment will be granted for the [movant].'" *Id.* (citing *Watt v. Brown County*, 210 F. Supp. 3d 1078, 1083 (E.D. Wis. 2016); *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999)).

For the race discrimination claim, as with the disability discrimination claim, Norwood needed to show evidence that "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. But she has offered no argument that she can support with the required proof that Aurora discriminated against her on the basis of race.

While Norwood's abandonment of her argument may have been out of neglect, it also appears to be correct given the undisputed facts. Any evidence that an Aurora employee racially discriminated against Norwood is belied by Norwood's own contradicting and shifting positions. In the complaint, Norwood initially based her Title VII claim on an alleged conversation she had with an Aurora employee, Mulder, who, she claimed, suggested that Norwood may have smoked during a recent holiday and then forgotten about it. ECF No. 1 at 5, 8. Later, in her deposition, Norwood testified that the *sole* basis for her race-discrimination claim was this same conversation, but this time she claimed the suggestion that she had forgotten about smoking over a holiday came from Womack's assistant. ECF No. 19-1 at 9, 19. Still later, in a declaration, Norwood contradicted both prior versions and swore the conversation was *not* in fact with Womack's assistant or with Mulder, but with a different Aurora employee, Roemheld. ECF No. 23 at 4. Yet, in Norwood's response to Aurora's statement of facts, she admits she had the conversation with Womack's assistant, but asserts that she had a similar conversation with Roemheld. ECF No. 29 at 14, 15. These multiple competing versions of the alleged conversation arguably give grounds for striking Norwood's declaration under the "sham affidavit" rule. *See Pekrun v. Puente*, 172 F. Supp. 3d 1039, 1046 n. 2 (E.D. Wis. 2016).

The Court need not resort to this rule, however. Even assuming Roemheld made the alleged comments to Norwood, no reasonable jury could conclude the comments were *racially* motivated. Nor do they create a genuine dispute of fact over whether Aurora used its drug-free workplace policy as a pretext for race discrimination. *See Bless*, 9 F.4th at 575. The alleged comments do not refer to race at all. Even if the Court follows Norwood's tenuous logic that the comments "insinuate[d] that there is a class, a group of people [who smoke marijuana during

holidays and then forget about it]," ECF No. 29 at 15, ECF No. 19-1 at 18, there is no reason to believe that the implied class was defined by race. Because Norwood does not specify when the alleged conversation with Roemheld took place, it is unclear whether Roemheld would even have known or had reason to know Norwood's race at that time. *See* ECF No. 20 at 4; ECF No. 29 at 9–10, 12 (Roemheld testified she was not aware of Norwood's race at time of withdrawal decision.).

## CONCLUSION

For the reasons given above,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment, ECF No. 16, is **GRANTED**, and the complaint, ECF No. 1, is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that the joint expedited motion to adjourn the final pre-trial conference, ECF No. 32, is **DENIED as moot**.

Dated at Milwaukee, Wisconsin on July 8, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge